STATE of Missouri, Respondent,

v.

Eduard RODRIGUEZ, Appellant.

No. 76620.

Supreme Court of Missouri,
En Banc.

May 26, 1994.

Donald R. Cooley, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

In this case we consider whether the Fourth Amendment permits the state to obtain a conviction based on evidence discovered when the driver of an over-the-road truck consents to a search of his padlocked load during a weigh station safety inspection authorized by Section 304.230.3(1). The trial court overruled appellant's motion to suppress the marijuana uncovered in the search. The court of appeals, southern district, reversed. We granted transfer because of the importance of the question presented. We have jurisdiction. Mo. Const. art. V, § 10. The judgment of the trial court is affirmed.

### I.

At 8:40 a.m. on March 11, 1992, Eduard Rodriguez drove the tractor-trailer he was operating from Interstate I–44 onto the scales of the commercial vehicle weighing station near Strafford, Missouri. The commercial vehicle inspectors working there noticed that the cab of the truck had no Interstate Commerce Commission (ICC) number on it as required by law and, instead of displaying the apportioned license plate normally purchased by vehicles used in interstate commerce, Rodriguez' vehicle bore an intrastate, full-fee Texas license plate.

These discrepancies in normal licensing practice caused the inspectors to ask Rodriguez to pull his truck to the side and to bring his paperwork and documentation into the weigh station. Rodriguez complied. Inside the weigh station, the inspectors noticed other discrepancies in Rodriguez' paperwork. He did not have a form D or "bingo" card as is required by ICC regulations. He likewise could not display a Texas Railroad Commission cab card. He had not completed the required driver's log. Rodriguez' handwritten bills of lading indicated that he was carrying a load of potatoes and onions for which he had paid cash.

Inspection of the vehicle revealed that the trailer was not ventilated. In the inspectors' experience, produce loads were usually ventilated to prevent spoilage. Moreover, Rodriguez had secured the load with three padlocks. In the inspectors' experience, produce loads were normally secured only with seals that revealed tampering with the load, not padlocks.

Given these violations of laws, rules and regulations relating to the transportation in

interstate commerce and aroused by reasonable suspicions about the manner in which Rodriguez had secured and transported his load of produce, the inspectors called the Missouri Highway Patrol and asked for an officer to attend the scene. The inspectors did not tell Rodriguez that they had called the Highway Patrol. Instead, they continued to inspect Rodriguez' credentials and truck for compliance with Missouri commercial vehicle laws, rules and regulations as they were authorized and permitted to do by statute. This inspection began at the time Rodriguez pulled his truck into the weigh station and continued until after the patrol officer had arrived.

In response to the inspectors' call, Trooper David Henson arrived at the weigh station approximately twenty minutes after Rodriguez first appeared there. After conversation with the vehicle inspectors, Henson conducted his own inspection of Rodriguez' papers and vehicle and asked Rodriguez whether he was carrying "dope" or "drugs." Rodriguez denied that he was. Trooper Henson asked Rodriguez for permission to search the trailer. Rodriguez agreed that Henson could "look inside." During the course of the search, approximately three-quarters of the way inside the trailer, Henson found a box of processed marijuana loaded among the potatoes and onions. Further search revealed seven additional boxes of marijuana. The total weight of the marijuana confiscated exceeded 700 pounds. Henson arrested Rodriguez. The state charged him with trafficking drugs in the second degree in violation of Section 195.223, RSMo Supp.1991.

Prior to trial, Rodriguez filed a motion to suppress the marijuana, claiming that it was the product of a search that violated his rights under the Fourth Amendment, and to suppress statements he made to another trooper following his arrest and receipt of *Miranda* warnings. The trial court heard evidence and overruled both aspects of the motion to suppress. Subsequently, in a bench trial, the trial court found Rodriguez guilty as charged and sentenced him to fifteen years in the Missouri department of corrections.

On appeal, the court of appeals reversed the trial court's ruling on the motion to suppress, finding that the search of Rodriguez' vehicle violated his rights under the Fourth Amendment.

## II.

### A.

The Fourth Amendment to the United States Constitution provides in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .

■ Determinations as to the level of protection afforded an individual by the Fourth Amendment from governmental intrusion are inevitably contextually driven and require the Court to balance privacy rights against the government's interest in enforcing the law. A legally required inspection of a travelling vehicle is a seizure within the meaning of the Fourth Amendment. *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). Generally, a seizure undertaken without probable cause and without the authority of a warrant issued by a neutral magistrate is reasonable within the meaning of the Fourth Amendment only to the extent that the government's interests in conducting the search and seizure outweighs the individual's reasonable expectations of privacy. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607 (1975).

■ Judicial construction of the Fourth Amendment recognizes that an individual's expectations of privacy in a vehicle are substantially lower than those that exist for a private dwelling. *United States v. Ortiz*, 422 U.S. 891, 896, n. 2, 95 S.Ct. 2585, 2588–89, n. 2, 45 L.Ed.2d 623 (1975). This is particularly true with commercial drivers. They are highly regulated. Their records and vehicles are subject to frequent checkpoint and roving inspections that seek compliance with state and federal law.

The state's interest in stopping, weighing and inspecting vehicles is the product of concern for the safety of those travelling a state's highways and the necessity of minimizing the destructive impact of overweight vehicles on those highways. These are legitimate governmental concerns that are worthy of significant weight in a Fourth Amendment analysis.

■ The United States Supreme Court has found that vehicular seizures are unreasonable—and thus violate the Fourth Amendment—where the vehicular stop is the product of unchanneled discretion by law enforcement personnel, *Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. at 2581–82, is unnecessarily "frightening or offensive," *Ortiz,* 422 U.S. at 895, 95 S.Ct. at 2588, or interferes with legitimate traffic more than minimally. *Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. at 2581–82. Permanent checkpoints channel law enforcement discretion, reassure "law abiding motorists that the stops are duly authorized and believed to serve the public interests" and create minimal interference with legitimate traffic, *United States v. Martinez–Fuerte,* 428 U.S. 543, 559, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976).

■ As we have said, commercial operators of motor vehicles have low expectations of privacy. The state's interest in highway preservation and safety are high. We hold, therefore, that permanent checkpoints at which all or nearly all of the commercial vehicles are required to submit to weighing and inspection constitute reasonable seizures within the meaning of the Fourth Amendment.

#### B.

The question remains whether, under these circumstances, the Fourth Amendment permits (1) the more detailed inspection undertaken by the inspectors subsequent to the discovery of the licensing and regulation violations and (2) the initial questioning by Trooper Henson upon his arrival. At issue in this portion of our analysis is the length of the seizure the constitution will permit.

Rodriguez initially argues that the commercial vehicle inspection undertaken by the inspectors during the period of time between Rodriguez' arrival at the commercial vehicle weigh station and the arrival of Trooper Henson exceeded a reasonable time and was pretextual. "Evidence procured as a result of a pretextual arrest is inadmissible because it is obtained as a result of an arrest made invalid under the Fourth Amendment of the United States Constitution." *State v. Dulany,* 781 S.W.2d 52, 57 (Mo. banc 1989).

In *State v. Mease,* 842 S.W.2d 98 (Mo. banc 1992), this Court determined that it would no longer inquire into an officer's subjective motives in making an arrest. "[S]o long as the police do no more than they are objectively authorized and legally permitted to do, an officer's motives in making an arrest are irrelevant and not subject to inquiry." *Id.* at 105–106.

■ In this case, the commercial motor vehicle inspectors and Trooper Henson were objectively authorized and legally permitted to conduct the inspection of Rodriguez tractor-trailer for violations of Missouri safety laws, rules and regulations. § 304.230, RSMo 1986. That the inspectors had a different, subjective motive for their objectively lawful actions is irrelevant to the Fourth Amendment inquiry provided the length of the stop itself is not unreasonable.

In *Martinez–Fuerte,* the United States Supreme Court considered "whether a vehicle may be stopped at a fixed checkpoint for brief questioning of its occupants even though there is no reason to believe the particular vehicle contains illegal aliens." *Martinez–Fuerte,* 428 U.S. at 545, 96 S.Ct. at 3077. The defendant, Martinez–Fuerte, had argued that the Fourth Amendment forbade stops of vehicles and brief questioning of the occupants by immigration and naturalization officers without the articulable, reasonable suspicion necessary to support a stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Rejecting that argument, the Supreme Court held that "the stops and questioning at issue may be made in the absence of any individualized suspicion at reasonably located checkpoints." *Martinez–Fuerte,* 428 U.S. at 562, 96 S.Ct. at 3085.

■ We think *Martinez–Fuerte* controls this case. The stop of which Rodriguez complains occurred at a fixed checkpoint. Initial discovery of violations of state and federal laws and regulations prompted the inspectors to conduct a more thorough search and contact Trooper Henson, who possessed independent authority to inspect the Rodriguez vehicle under state law. The length of the stop and questioning—approximately twenty-five minutes—was consistent with the requirements of a vehicle inspection, given the law violations initially discovered and the state's interest in highway safety. The length of the stop here was therefore reasonable under the Fourth Amendment.

■ Moreover, the Fourth Amendment permitted Trooper Henson to inquire as to the nature of the Rodriguez load as part of that inspection. Indeed, by Rodriguez' own account, he believed that Trooper Henson was inquiring about the load. He claims on the consent issue that he gave consent to inspect the load to determine the size of the bags he was carrying.

Trooper Henson's questions were superficial, brief and related to the lawful purpose of the inspection. That the permitted questioning led to a reasonable suspicion concerning Rodriguez' cargo does not change the analysis. The Fourth Amendment permits the initial questioning.

As to the seizure of Rodriguez vehicle, we hold that the checkpoint weighing and inspection undertaken here did not violate Rodriguez' rights under the Fourth Amendment. Moreover, we hold that, under the authority of *Martinez–Fuerte*, the Fourth Amendment permitted Trooper Henson to make an initial inquiry of Rodriguez as to the nature of the cargo he carried, even in the absence of individualized suspicion.

### C.

We turn now to consider the search of Rodriguez' vehicle. It is true that the Fourth Amendment will not permit the search undertaken here without "some quantum of individualized suspicion." *Martinez–Fuerte*, 428 U.S. at 560, 96 S.Ct. at 3084. The state claims that Rodriguez consented to the search and, if that is so, he cannot complain that the search violated the Fourth Amendment. Rodriguez admits that he consented to some sort of search, but urges that he did not consent to the thorough search undertaken here. He does not contend that the consent to search was either involuntarily or unknowingly given.

At the suppression hearing, Rodriguez testified that he gave permission only to "look inside the truck" thinking that Trooper Henson and the inspectors were merely attempting to verify whether the bags of produce were 50 or 100 pound bags. On the evidence, the trial court found that Rodriguez consented to a full search of the vehicle.

■ The trial court's factual determinations will be sustained unless there is insufficient evidence to support those rulings. *State v. Hyland*, 840 S.W.2d 219, 222 (Mo. banc 1992). On review, the appellate court considers the facts and the reasonable inferences of those facts in light most favorable to the trial court's ruling. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987), *overruled on other grounds, State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992). We find no basis in the record to dispute the trial court's conclusion.

In sum, we find that the seizure of Rodriguez' tractor-trailer at a fixed checkpoint, the subsequent search of its contents with Rodriguez' consent, and his arrest following the discovery of marijuana did not violate the Fourth Amendment.

### D.

For his final point, Rodriguez contends that the trial court erred in failing to suppress his statements to Trooper J.J. Bickers. Rodriguez insists that the statements were tainted by his "illegal arrest."

■ As we have already found Rodriguez' arrest lawful, we turn to his contention that use of his statements as evidence violated his rights under the Fifth Amendment. In essence, Rodriguez believes that the giving of warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is insufficient when there is a time

delay between arrest and interrogation. Indeed, he now claims that by the time Trooper Bickers began the interrogation, he no longer understood his rights and that they should have been explained to him again.

The Fifth Amendment does not require repeated giving of *Miranda* warnings. *State v. Bailey*, 714 S.W.2d 590, 593 (Mo. App.1986). Rodriguez admitted that he understood English at the suppression hearing. The trial court heard evidence and found that Rodriguez received *Miranda* warnings after his arrest. This was prior to any interrogation by law enforcement officers. At no point did Rodriguez claim that he did not understand the warnings—until the suppression hearing. There is neither a factual nor legal basis for this Court to reach a different conclusion. The point is denied.

### III.

The judgment of the trial court is affirmed.

All concur.