STATE of Missouri, Respondent,

v.

George BRISCOE, Jr., Appellant.

George BRISCOE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 48519, WD 50184.

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 1995.

Application to Transfer Denied
Feb. 20, 1996.

Rosemary E. Percival, Assistant Appellate Defender, Kansas City for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

ULRICH, Judge.

After a jury trial, George Briscoe, Jr. was convicted of first degree robbery and armed criminal action under sections 569.020 and 571.015.1, RSMo1986. The trial court sentenced him to concurrent prison terms totaling fifteen years. Mr. Briscoe then sought postconviction relief under Rule 29.15. After an evidentiary hearing, the court ordered correction of the sentence to reflect that Mr. Briscoe was not a prior or persistent offender. The court, however, denied claims of ineffective assistance of counsel.

This appeal consolidates Mr. Briscoe's appeal from the judgment of conviction and his appeal from denial of his Rule 29.15 claims. Mr. Briscoe now challenges (1) the admission

of evidence of an uncharged crime; (2) the sufficiency of the evidence; (3) the rejection of his proposed modification of MAI–CR3d 302.01 to include specific instruction on eye-witness testimony; and (4) the denial of his postconviction claims that his counsel failed to object to improper closing argument and cross-examination.

### Background

The Reverend Clinton Hall was robbed at approximately 10:30 p.m. on May 11, 1991, in front of his home in Kansas City. While the Reverend Hall was walking from his drive-way across his lawn to his front porch, some-one yelled "Hey." As he looked toward his front yard, the Reverend Hall saw a man pointing a chrome handgun at him. The man, a male dressed in dark clothing, stood from eight to ten feet away from the Rever-end Hall. When the man said, "I want your money," the victim tossed his wallet at the man's feet. Still pointing the gun, the man questioned his victim for several minutes about how much money was in the wallet. The man finally told the victim, "You better take off running." The Reverend Hall com-plied.

The ensuing investigation eventually fo-cused on Mr. Briscoe. The police recovered the Reverend Hall's wallet from Brad Wayne Ballah, who said he obtained the wallet from a social friend, Mr. Briscoe. Mr. Ballah also told the police that Mr. Briscoe possessed a silver or chrome handgun. During question-ing, Mr. Briscoe gave the police different versions as to how and where he found the Reverend Hall's wallet. The police assem-bled a photographic line-up and a videotape line-up that included Mr. Briscoe. The Re-verend Hall viewed the line-ups separately several weeks apart. At both line-ups, the Reverend Hall identified Mr. Briscoe as the robber; he also identified Mr. Briscoe as the robber in court during trial.

### Evidence of Uncharged Crime

■ In Point I, Mr. Briscoe contends that the trial court committed reversible error in admitting evidence of an uncharged crime. He maintains that the state presented evi-dence implicating him in the fraudulent use

of a credit card. In support, Mr. Briscoe points to evidence of a credit card receipt admitted during the Reverend Hall's testimo-ny. When asked to identify the wallet recov-ered by the police, the Reverend Hall noted that it contained credit cards, papers, and receipts. Over defense counsel's objection, the Reverend Hall was allowed to testify that inside the recovered wallet was a credit card receipt bearing his signature, but he said he had not signed it. Again over defense coun-sel's objection, the trial court admitted the receipt in evidence; the state, however, later withdrew the receipt from evidence.

Mr. Briscoe insists that the credit card receipt combined with other testimony about his giving the wallet to Mr. Ballah improper-ly conveyed to the jury his possible involve-ment in the fraudulent use of a credit card. He asserts that the evidence constituted im-proper evidence of an uncharged crime that was not admissible under any exception to the rule prohibiting evidence of other crimes. Because the victim positively identified Mr. Briscoe as the robber, Mr. Briscoe maintains that the state had no necessity for presenting the credit card receipt evidence. According to Mr. Briscoe, the state introduced that evidence solely to depict him as having a bad character and a propensity for committing crimes.

■ The rule excluding evidence of un-charged crimes applies to evidence showing that *the defendant* has committed, has been accused of, has been convicted of, or has been definitely associated with another crime. *State v. Silvers,* 735 S.W.2d 393, 397 (Mo.App.1987). Conversely, the rule does not apply when no evidence links the defen-dant to the uncharged crime. *State v. Sua-rez,* 867 S.W.2d 583, 588 (Mo.App.1993). To rely on the rule, the defendant bears the burden of showing that the evidence actually constitutes evidence of an uncharged crime. *State v. Simms,* 859 S.W.2d 943, 945 (Mo. App.1993).

■ The necessary nexus between the de-fendant and the uncharged crime does not exist when the defendant's involvement in the other crime is speculative, when the de-fendant is not identified as the perpetrator,

or when the other crime is attributed to someone other than the defendant. The following examples illustrate evidence that failed to constitute evidence of uncharged crimes subject to exclusion under the rule: (1) A witness in a robbery case noted that the police were having some problems in an area where the defendant had been present. *State v. Hawkins,* 679 S.W.2d 894, 896 (Mo. App.1984). (2) A witness in a murder prosecution related that the defendant's brother had bragged about killing a few people. *State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984), *cert. denied* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). (3) A burglary victim testified that his home had been burglarized on three earlier occasions. *Silvers,* 735 S.W.2d at 397. (4) In a drug prosecution, an undercover officer testified that he bought drugs from another man at the same house where the defendant had previously sold him drugs. *Suarez,* 867 S.W.2d at 588. (5) A surveillance photograph of the defendant standing before an automatic teller machine failed to implicate him in the uncharged crime of using a stolen credit card. *United States v. Calkins,* 906 F.2d 1240, 1246 n. 5 (8th Cir.Mo.1990).

Here, Mr. Briscoe has failed to show that the evidence of the credit card receipt constitutes evidence of an uncharged crime. The Reverend Hall testified that he had not signed the credit card receipt found in his wallet. Although the testimony suggests that someone forged the signature, the testimony does not necessarily implicate Mr. Briscoe. The testimony made no reference to Mr. Briscoe; it contained nothing to definitely associate Mr. Briscoe with fraudulent credit card use. Further, the testimony contained no details about the time or place of the use of the credit card. As a result, the credit card testimony was not prohibited by the rule excluding evidence of uncharged crimes.

■ Even if not prohibited by the rule precluding introduction of evidence of an uncharged crime, the evidence must still have some relevance to justify its admission. *Suarez,* 867 S.W.2d at 588. Here, the relevance of the credit card testimony is not immediately apparent. The state evidently abandoned that area of proof. Nevertheless, the admission of irrelevant evidence does not result in reversible error unless the evidence prejudiced the defendant's right to a fair trial. *State v. Hoy,* 570 S.W.2d 697, 699–700 (Mo.App.1978). In this case, the testimony about the credit card receipt consisted of a brief comment that the robbery victim had not signed the receipt. Nothing in the testimony directly linked Mr. Briscoe to fraudulently using the credit card. No other witness mentioned the credit card receipt. The state withdrew the receipt from evidence and made no reference to it during closing argument. These circumstances fail to show any prejudice to Mr. Briscoe. Point I is denied.

### Sufficiency of the Evidence

■ In Point II, Mr. Briscoe argues that the evidence was insufficient to support both convictions. To establish guilt of first degree robbery under section 569.020.1(2) and armed criminal action under section 571.015.1, the state was required to prove that Mr. Briscoe was "armed with a deadly weapon" and that he committed the robbery "by, with, or through the use, assistance, or aid, of a dangerous instrument or deadly weapon." Mr. Briscoe asserts that the state presented no reliable evidence showing that he was armed with or used a deadly weapon, an essential element of both offenses. He discounts the testimony of the Reverend Hall and Brad Wayne Ballah about use and possession of a firearm. Supporting his argument, Mr. Briscoe stresses that the Reverend Hall testified on cross-examination that he saw only the "business end" or barrel of the handgun and that he could not discern whether the firearm was real. Under Mr. Briscoe's theory, the jury could not have concluded beyond a reasonable doubt that he was armed with or used a deadly weapon.

Contrary to Mr. Briscoe's assertions, the victim's testimony alone made a submissible case showing the commission of the crimes with a deadly weapon. *State v. Maher,* 743 S.W.2d 561, 563 (Mo.App.1987). The Reverend Hall testified that the robber pointed a chrome handgun at him and that he gave up his wallet fearing that the firearm was real. The testimony about the handgun in itself

provided evidence of a dangerous and deadly weapon. *State v. Hillis,* 748 S.W.2d 694, 696 (Mo.App.1988). The jury was not bound by the attempted inference, raised on cross-examination, that the firearm was not real. *Maher,* 743 S.W.2d at 564. The evidence supports the findings of guilt of first degree robbery and armed criminal action. Point II is denied.

### *Modification of MAI–CR3d 302.01*

■ In Point III, Mr. Briscoe contends that the trial court erred in rejecting his proposed modification of MAI–CR3d 302.01, the jury instruction delineating the duties of judge and jury. Mr. Briscoe proposed changes to the third paragraph of MAI–CR3d 302.01, which concerns determining credibility. In his proposed modification, Mr. Briscoe added specific provisions detailing criteria for the jury to consider in assessing the credibility of eyewitnesses. Mr. Briscoe modeled the additional criteria on suggestions for special cautionary instructions on eyewitness identification in *United States v. Telfaire,* 152 U.S.App.D.C. 146, 152–153, 469 F.2d 552, 558–59 (D.C.Cir.1972). Mr. Briscoe's proposed modification to the third paragraph of MAI–CR3d 302.01 appears below with the additional criteria in the highlighted portion:

> In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; *the opportunity of the witness to observe the offender at the time of the offense as affected by such matters as how long or short a time was available, how far or close[,] the witness was, how good were the lighting conditions, whether the witness had had the occasion to see or know the person in the past;* any interest or bias or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

Mr. Briscoe argues that the trial court abused its discretion in refusing his proposed modification of MAI–CR3d 302.01. He insists that the modification was necessary because the sole issue in his case was the identification of the robber. Asserting prejudice, Mr. Briscoe claims that the instructions given to the jury lacked sufficient detail on identification testimony.

Rejecting the identical argument presented here, *State v. Gilmore,* 797 S.W.2d 802, 809 (Mo.App.1990), held that no error results when the trial court refuses an additional cautionary instruction on eyewitness testimony modeled on *Telfaire,* 469 F.2d at 558–59. An additional cautionary instruction is unnecessary because Missouri Approved Instructions, including the general credibility instruction in MAI–CR3d 302.01, adequately provide for the defendant's theory of misidentification. *Gilmore,* 797 S.W.2d at 809–10. Further, the MAI Notes On Use and Rule 27.02(e) require giving MAI–CR3d 302.01 and prohibit giving additional instruction on the believability of witnesses. Consequently, Point III is denied.

### *Postconviction Relief*

Mr. Briscoe devotes his Point IV to the denial of postconviction relief on claims of ineffective assistance of counsel. He asserts that the trial court clearly erred in denying relief on claims that his counsel failed to object to improper closing argument and cross-examination.

■ As sub-point A, Mr. Briscoe maintains that his defense counsel provided ineffective representation by failing to object during the following portion of the state's closing argument:

> Ladies and gentlemen, to prove that this case involved a weapon, I do not have to prove that weapon—I don't have to claim that even. All I have to do is produce evidence to make you believe it was a real gun. The business end of a gun, he testified to that. He didn't see the handle. He didn't see the handle, and you can use your common sense in the fact that Brad Ballah told you that this man has carried a gun

before. To believe beyond a reasonable doubt that there was a gun present when a robbery occurred, you can use your logic and common sense to determine that. That is allowed.

Mr. Briscoe submits that the argument misstated the law on armed criminal action and effectively lessened the state's burden of proof. Asserting prejudice, Mr. Briscoe maintains that his defense counsel's admitted error made conviction easier by allowing the jury to convict without finding the gun was real.

■ Mr. Briscoe fails to show that his defense counsel's failure to object constituted incompetence affecting the outcome of trial. A defendant is held to the consequences of his attorney's failure to object, whether the failure results from a strategic decision or from inadvertence. *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc 1990); *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). Counsel's failure to make even a meritorious objection does not demonstrate incompetence. *Jones,* 784 S.W.2d at 793. Entitlement to postconviction relief requires showing that counsel's overall performance fell below established norms and that this incompetence affected the result. *Id.* Mr. Briscoe has not made the requisite showings from this isolated incident. Sub-point A is denied.

■ In sub-point B, Mr. Briscoe faults his defense counsel for not objecting during cross-examination. The background for the claim follows. Mr. Briscoe indicated in his direct testimony that he had always worn some type of facial hair since age 17. While cross-examining Mr. Briscoe, the assistant prosecutor held a photograph in his hand and then asked Mr. Briscoe, "What would you say if I showed you a picture of you with no facial hair?" Mr. Briscoe replied that he had had the same goatee since age 17, but if a picture showed him without facial hair, it would have to be the truth. After the cross-examination had concluded and outside the jury's presence, defense counsel objected to the assistant prosecutor's insinuation that he had a photograph showing Mr. Briscoe as clean-shaven; defense counsel then challenged him to produce that photograph. In

response, the assistant prosecutor introduced the picture showing Mr. Briscoe with facial hair. During closing argument, defense counsel chastised the prosecution over the deceptive use of the photograph and directed the jury to look at the photograph.

■ Mr. Briscoe complains in essence about the timing and the handling of the objection to the cross-examination. Counsel's handling of objectionable evidence is a matter of trial strategy which provides no basis for a claim of ineffective assistance. *See State v. Lay,* 896 S.W.2d 693, 700 (Mo. App.1995). Here, defense counsel effectively dealt with any damage from Mr. Briscoe's cross-examination testimony by forcing the prosecution to produce the photograph and by calling the jurors' attention to that deception during closing argument. The record reflects the reasonableness of the trial strategy. Sub-point B is denied.

### Conclusion

The judgments of conviction and denial of postconviction relief are both affirmed.

All concur.