**STATE of Missouri, Respondent,**

v.

**Walter J. HUNTER, Appellant.**

**No. WD 58319.**

Missouri Court of Appeals,
Western District.

Jan. 30, 2001.

As Modified March 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Vanessa Caleb, Jeannie M. Willibey, Asst. Appellate Defenders, Kansas City, for appellant,

Before SPINDEN, C.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Walter J. Hunter appeals the circuit court's judgment of his jury convictions for seven counts of first-degree robbery, § 569.020,[1] and seven counts of armed criminal action, § 571.015. As a result of his convictions, the appellant was sentenced as a prior offender, § 557.036, RSMo Supp.1996 and § 558.016, to seven consecutive sentences of life imprisonment for first-degree robbery and seven consecutive sentences of life imprisonment for armed criminal action (ACA), with the sentences for robbery to be served concurrently with the sentences for ACA.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his pretrial motion to suppress evidence concerning his out-of-court and in-court identifications because the photo array used in his pretrial identification was unduly suggestive, rendering both his out-of-court and in-court identifications unreliable and violating his right to due process. In Point II, he claims that the trial court erred in entering its written judgment and sentence because it materially deviated from its oral pronouncement.

We affirm in part, and reverse and remand in part.

## Facts

The appellant was charged in the Circuit Court of Jackson County with eight counts

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

of first-degree robbery and eight counts of armed criminal action. The charges arose out of a string of fast-food restaurant robberies in the Kansas City area between July 12, 1998, and September 5, 1998. In each of these robberies, the appellant, posing as a customer and wearing a baseball cap, would reveal a silver-colored gun from under a towel or notebook and demand money from the cash register.

Several restaurant employees and one customer identified the appellant pretrial as the robber from a photo array the police showed them. These witnesses also identified the appellant as the robber at trial. The appellant filed a pretrial motion to suppress the identification testimony of two witnesses, J'rome Hoskins and Marlon Berry, alleging that the photo array used by the police was unduly suggestive in that the appellant's photo was the only photo of the six that included his name and birth date. On the day of trial, the court heard testimony and arguments on appellant's pretrial motion to suppress. The detective who prepared the photo array testified that it consisted of six photos of persons of similar appearance, including the appellant's, which was the only one that included the person's name and birth date. Several of the other photos did include birth dates of the individuals depicted. The detective further testified that the police did not at any time inform Hoskins or Berry of the name of the suspect and that the witnesses indicated that they did not know the name of the person who robbed them. The court overruled the appellant's motion to suppress.

At trial and over the appellant's objections, Hoskins and Berry testified as to their out-of-court identifications of the appellant. Hoskins, an employee of one of the Kentucky Fried Chicken restaurants that was robbed, testified that the appellant robbed him at gunpoint. He further testified that he told the police that although he was not "absolutely sure" the appellant was the robber, his identification of the appellant was a "9," with a "10" being 100% certain of his identification. Berry, a cook at the Pancake House which was robbed, testified that he had a similar experience to Hoskins, except that he was called from the kitchen to help open the register. Both witnesses identified the appellant in court as the robber.

On February 18, 1999, the appellant was found guilty by a jury on seven of the eight counts of first-degree robbery and on seven of the eight counts of ACA, including the charges relating to the robberies of Kentucky Fried Chicken and the Pancake House. After the appellant's post-trial motions were heard and ruled upon, the appellant was orally sentenced by the trial court to seven consecutive life sentences for armed robbery and seven consecutive life sentences for ACA, to be served concurrently with his sentences for armed robbery. The trial court's original written judgment and sentence reflected that the appellant had been found guilty and sentenced on all sixteen counts, even though the jury had found him "not guilty" as to two of those counts, Counts V and VI. It further reflected that his ACA sentences were to be served *concurrently* with each other and consecutively with his sentences for armed robbery. The trial court later amended this judgment to reflect that the appellant had not been convicted of Counts V and VI.

This appeal follows.

### I.

In Point I, the appellant claims that the trial court erred in overruling his pretrial motion to suppress evidence concerning his out-of-court and in-court identifications because the photo array used in his pretrial identification was unduly suggestive,

rendering both his out-of-court and in-court identifications unreliable and violating his right to due process. Specifically, he claims that the photo array was unduly suggestive in that, unlike the other photos used in the array, his name and two dates, 092597 and 042458, appeared below his photo, causing it to stand out and indicating that he was the obvious suspect. We disagree.

■ Review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether there is substantial evidence to support its decision. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. *banc* 1998). "The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous. The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made." *State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App.1999) (citations omitted). "In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court." *State v. Carter*, 955 S.W.2d 548, 560 (Mo. *banc* 1997) (*citing State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. *banc* 1992)). "Deference is given to the trial court's superior opportunity to determine the credibility of witnesses. As in all matters, a reviewing court gives deference to the trial court's factual findings and credibility determination, but reviews questions of law *de novo*." *Rousan*, 961 S.W.2d at 845 (citation omitted).

■ The court's determination of whether the pretrial identification of a defendant is admissible involves a two-step analysis. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. *banc* 1989); *State v. Glover*, 951 S.W.2d 359, 362 (Mo.App. 1997), *denial of Post Conviction Relief aff'd*, 7 S.W.3d 526 (Mo.App.1999). The

first step involves determining whether the pretrial lineup was "unnecessarily suggestive and conducive to irreparable mistaken identification...." *Glover*, 951 S.W.2d at 362 (citations omitted). "A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recall of first-hand observations, but rather from the procedures or actions employed by the police." *Id.* (citations omitted). "An appellant 'must clear the suggestiveness hurdle before procuring a reliability review.' " *State v. Timmons*, 956 S.W.2d 277, 282 (Mo.App.1997) (*quoting State v. Jones*, 917 S.W.2d 622, 624 (Mo.App.1996)). "If the court determines that the procedure is not unduly suggestive, then the court may admit the pretrial identification and any in-court identification." *Glover*, 951 S.W.2d at 362.

■ " 'The linchpin of due process in identification procedures is reliability, not suggestiveness.' " *State v. Middleton*, 995 S.W.2d 443, 453 (Mo. *banc* 1999) (citations omitted). Thus, the second step of the trial court's analysis to determine the admissibility of identification evidence involves determining whether the "suggestive procedures [as found] have so tainted the identification as to lead to a substantial likelihood that the pretrial identification was not reliable." *Glover*, 951 S.W.2d at 362; *see also Hornbuckle*, 769 S.W.2d at 93. If it is determined that the pretrial identification procedures were so suggestive as to render the out-of-court identification unreliable, then the pretrial identification will be excluded. *Glover*, 951 S.W.2d at 362. Further, "if the court finds that the suggestive procedures have so affected the witness as to lead to a substantial likelihood that an in-court identification would not be reliable, then no in-court identification will be permitted." *Id.* (citations omitted).

■ The photo array challenged by the appellant, which was shown to witnesses Hoskins and Berry and from which they made their pretrial identifications of the appellant, consisted of six photographs, including the appellant's. The detective who compiled the array testified that it was prepared based upon information that he had received on a possible suspect. He obtained a photograph of the appellant from another police department. The photographs of the other five individuals used in the array were obtained from his own files. The detective testified that these photographs were chosen because the individuals depicted were similar in appearance to the appellant. The appellant's photograph was the only one that included, on the front, his name, date of birth, and another date, although several other photographs included the individuals' dates of birth. The detective testified that the witnesses were not told prior to their out-of-court identifications that the suspect's name in the case was "James Walter Hunter" nor were they aware by name that the person who they believed to have robbed them was the appellant.

In claiming that the photo array was unduly suggestive, the appellant did not present any evidence below that the police said or did anything to prompt the witnesses to identify him, other than using his photograph, which was different than the rest. In this regard, his sole contention below and on appeal is that the "difference between [his] photo and the other photos drew undue attention to [him]." In our view, based on previous holdings of our appellate courts, this unintentional highlighting of the appellant's photo, although less than ideal, did not cause the photo array employed by the police to be unduly suggestive so as to violate the appellant's due process right. *See State v. Walker,* 755 S.W.2d 404, 407 (Mo.App.1988) (holding that a photo lineup, in which five of the

six photographs had a light blue concrete wall background, while the defendant's had a pink smooth wall background, was not unduly suggestive); *State v. Hadley,* 736 S.W.2d 580, 591 (Mo.App.1987) (holding that a photo lineup was not unduly suggestive where the photographs of four of the five individuals were consisted of both a full-face and profile view, whereas the defendant was only depicted in two full-face views); *State v. Robinson,* 591 S.W.2d 18, 20 (Mo.App.1979) (holding that the photographic lineup was not unduly suggestive even though the defendant's name, height and weight were listed on the defendant's photograph); *State v. Davis,* 507 S.W.2d 32, 34 (Mo.App.1974) (holding that the identification procedure was not unduly suggestive where, of the various suspects presented to the witness, the defendant alone was identified by name).

■ Even assuming, *arguendo,* that the photo lineup employed by the police was unduly suggestive, the identification evidence challenged would still have been admissible, unless the pretrial lineup caused the witnesses' out-of-court and in-court identifications to be unreliable. *Middleton,* 995 S.W.2d at 453. In determining reliability, appellate courts consider:

> 1) the opportunity of the witness to view the subject; 2) the witness's degree of attention; 3) the accuracy of any prior description given by the witness; 4) the level of certainty demonstrated by the witness in making the identification; and 5) the interval between the event and the identification procedure.

*Id. (citing State v. Littleton,* 649 S.W.2d 225, 227 (Mo. banc 1983)).

Based on a careful review of the record, it appears that both Hoskins and Berry had ample opportunity to view the appellant and certainly would have been very

attentive given the fact that they were being robbed at gunpoint. Both were able to give detailed descriptions of the appellant and were very certain as to their out-of-court and in-court identifications. Further, the record indicates that the intervals of time that had elapsed between the robberies and the witnesses' out-of-court identifications of the appellant were relatively short. Under these circumstances, we cannot say that the trial court was not justified in finding that the witnesses' identifications of the appellant were reliable so as to not violate his right to due process.

For the reasons stated, we find that the trial court did not err in overruling the appellant's pretrial motion to suppress the identification evidence in the case.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in entering its written judgment and sentence because it materially deviated from its oral pronouncement. Specifically, the appellant contends that the court's written judgment and sentence materially deviated in two respects: (1) Although the court pronounced at trial that the appellant had been found "not guilty" on Counts V and VI, the written judgment reads that he was found guilty and sentenced on both counts; and (2) Although the court pronounced at sentencing that the appellant's sentences for ACA were to run *consecutively* with each other and concurrently with his consecutive sentences for robbery, the written judgment reads that his ACA sentences were to run *concurrently* with each other. The appellant asks us to remand the case to the trial court for the sole purpose of amending its

judgment and sentence to correctly reflect its oral pronouncements, or in the alternative, to remand for the trial court to "clarify its original pronouncement of sentence."

■ As a general proposition, the trial court must enter its written judgment and sentence as orally pronounced. *State v. Franklin*, 975 S.W.2d 493, 494 (Mo.App. 1998). Exceptions exist where: (1) the oral pronouncement of the trial court is ambiguous such that it cannot be determined if the court's written judgment is materially different therefrom; or (2) the judge had no discretion to pronounce sentence different from the written sentence. *Johnson v. State*, 938 S.W.2d 264, 265 (Mo. banc 1997); *Franklin*, 975 S.W.2d at 494.

Here, the State agrees that the trial court's amended judgment entry, contrary to its oral pronouncements, provides that: (1) the appellant's sentences for ACA are to run concurrently rather than consecutively with each other;[2] and (2) the appellant was being sentenced on Counts V and VI. However, the State points out that although the amended entry incorrectly reflects that he was being sentenced on those two counts, it correctly reflects that he was found "not guilty" of the same and that no sentences were actually imposed on those counts. Thus, the State concedes that the trial court's written judgment and sentence should be further amended to correctly reflect, as clearly intended by the trial court, that the appellant was being sentenced to life imprisonment on seven counts each of armed robbery and ACA and that his sentences for robbery were to be consecutive with each other as were his sentences for ACA, with his consecutive life sentences for ACA to run concurrently

---

**2.** We recognize that this discrepancy would in no way prejudice the appellant and, in fact, might technically benefit him with respect to determining his eligibility for early release.

As a practical matter, regardless of the effect of his sentences for ACA, he would face seven consecutive life sentences for robbery.

with his consecutive life sentences for armed robbery.

### Conclusion

The circuit court's judgment of the appellant's convictions on Counts I–IV and VII–XVI is affirmed. The circuit court's judgment as to the appellant's sentences is reversed and the case is remanded for the sole purpose of requiring the court to amend its written judgment and sentence to reflect that the appellant: (1) was convicted for armed robbery on Counts I, III, VII, IX, XI, XIII, and XV and was sentenced to consecutive terms of life imprisonment thereon; and (2) was convicted of ACA on Counts II, IV, VIII, X, XII, XIV, and XVI and was sentenced to consecutive terms of life imprisonment thereon, with his sentences for ACA to run concurrently with his sentences for armed robbery.

SPINDEN, C.J., and NEWTON, J., concur.