Galen GLOVER, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 56579.

Missouri Court of Appeals,
Western District.

Submitted July 27, 1999.

Decided Nov. 16, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 21, 1999.

Application for Transfer Denied
Jan. 25, 2000.

Mark A. Grothoff, Public Defender, Columbia, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before RIEDERER, P.J., SMART and ELLIS, JJ.

JAMES M. SMART, Jr., Judge.

Appellant Galen Glover was convicted of first degree robbery and armed criminal action after a jury trial. His Rule 29.15 motion for post-conviction relief was denied by the trial court. Appellant appeals this denial of his 29.15 motion, claiming that the motion court clearly erred because he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution. Glover argues that his attorney's failure to fully cross-examine witnesses as to possible collusion in identifying a photograph of Glover constituted ineffective assistance of counsel. We hold that the motion court's ruling was not clearly erroneous and affirm the motion court's denial of Glover's Rule 29.15 motion.

## Factual Background

On the evening of May 23, 1995, at approximately 9:30 p.m., Brad and Cheryl Williams were robbed at gunpoint while they were out for a walk in their neighborhood in Gladstone, Missouri. A man approached the couple from behind, stopped in front of them and told them to give him their money. They told him that they did not have any money on them. At that point, another man drove up behind them, stopped the car (leaving the headlights on), got out and approached the three of them. He had a gun and appeared to be with the other man. He told Mr. Williams to give him his wallet, and Mr. Williams eventually did. The two men told Mr. and Mrs. Williams to run in the opposite direction.

The next day, the appellant, Galen Glover, along with two other men, attempted to use Mr. Williams' Montgomery Wards credit card at a Montgomery Wards store in Overland Park, Kansas. Upon determining that the credit card had been stolen, the loss prevention manager at the store detained Glover and one of his companions, Galen Horton, and called the Overland Park Police Department. Glover had several of Mr. Williams' credit cards in his possession, along with other items such as insurance cards.

A few days after Glover's arrest, a Gladstone police officer prepared two separate photo lineups for Mr. and Mrs. Williams to use in the identification of the perpetrators of the robbery. Both photo lineups contained six photographs. One included a photograph of Glover, and the other included a photograph of Horton.

Mr. and Mrs. Williams were shown the two photo lineups at different locations and at different times. Mr. Williams identified Horton from the second photo line-up, but did not identify Glover in the first photo lineup. Instead, he identified a photograph of a man named Michael Franklin as one of the participants. Mrs. Williams, on the other hand, tentatively identified Glover from his photo lineup, but was unable to identify Horton.

At Mr. Williams' deposition, eleven months later, Mr. Williams was again shown the photo lineup with Glover's photograph. At that time, he identified the photograph of Glover as one of the men who had robbed him. Both Mr. and Mrs. Williams identified Glover at trial.

At trial, Glover's defense attorney asked Mr. Williams why he was able to identify Glover's photograph eleven months after the robbery when he was unable to do so a few days after the robbery. Mr. Williams answered that it was because of the "size of the person's lips."

After Glover's conviction, Glover filed a Rule 29.15 post-conviction motion. In that motion, he contended that counsel failed to question Mr. or Mrs. Williams about the possibility that Mrs. Williams had told Mr. Williams which photograph she had correctly identified as the suspect's photograph. Appellant argued that because of his attorney's failure to cross-examine the Williamses on this point, he suffered from ineffective assistance of counsel. The motion court denied Glover's motion. The motion court ruled that the failure to

cross-examine could be regarded as acceptable trial strategy.

Glover appeals the motion court's determination on this issue.

## Standard of Review

In order to defeat a motion court's denial of a Rule 29.15 motion for post-conviction relief, the appellant has the burden of proving by a preponderance of the evidence that the trial court's ruling was "clearly erroneous." Rule 29.15(k), *State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc 1994). In order to find the trial court's ruling clearly erroneous, this court must be under the "definite and firm impression that a mistake has been made." *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

## Ineffective Assistance of Counsel

Glover's sole point on appeal is that he was denied effective assistance of counsel because of his trial attorney's failure to cross-examine the Williamses on the issue of whether they discussed their photographic identifications of Glover with each other. In order to prove ineffective assistance of counsel, Glover must meet the two prongs of the *Strickland* test originally set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Missouri Supreme Court in *Sanders v. State*, 738 S.W.2d 856, 857–58 (Mo. banc 1987). A movant must show (1) that his "attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances," and (2) that this failure resulted in prejudice to the defendant. *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991). Should a movant fail to satisfy either prong of the test, the other need not be considered. *State v. Whitfield*, 939 S.W.2d 361, 369 (Mo. banc 1997).

Glover contends that his attorney did not display the customary skill and diligence that a reasonably competent attorney would exercise because he did not question the witnesses at trial with regard to whether they discussed the identification photographs. He argues that since the witnesses are husband and wife, it should have occurred to counsel that they may at some point have discussed their individual viewings of the photo lineups. He further asserts that because Mrs. Williams had been told by police that she had successfully identified one of the persons in custody, it is conceivable that Mrs. Williams told Mr. Williams which photograph she had picked from Glover's lineup. Glover's argument is that a reasonably competent attorney would have cross-examined on this point.

At the motion hearing, Glover's counsel testified that his failure to ask during the trial whether Mr. and Mrs. Williams discussed the photographs was a mistake on his part. Glover's motion attorney also questioned Mr. and Mrs. Williams at the motion hearing as to whether they had discussed the photo lineup identifications between themselves. Both denied that they had done so. Mr. Williams also denied having ever discussed the facts of the case with his wife in any detail.

Even if we were to believe that counsel's failure to fully cross-examine was a tactical failure, and if the trial judge's conclusion that it was "trial strategy" is not correct, it does not necessarily follow that counsel was constitutionally ineffective. Such a determination requires careful review of the entire record. Ineffective assistance of counsel is not so much about a particular tactical failure or two by counsel; rather, it is about a performance by counsel that falls so far short of that necessary to provide a fair trial that the court feels compelled to order a new trial. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The benchmark for judging "ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential.

It is 'all too tempting' for a defendant to challenge counsel's assistance after conviction, and it is 'all too easy' for a court to conclude that a particular act or omission of counsel was unreasonable." *Id. See also State v. Graham*, 906 S.W.2d 771, 784 (Mo. App.1995) counsel made tactical mistake of commenting on reason defendant did not testify, opening door to rebuttal comments by prosecution.

Here, our evaluation of the entire record leads us to the conclusion that counsel performed in a reasonably competent, professional manner in a case that was challenging. Counsel effectively cross-examined Mr. and Mrs. Williams in an effort to raise doubt about their identifications of Glover, and argued the possibility of misidentification. Counsel highlighted for the jury the oddness of the fact that Mr. Williams, who could not identify Glover shortly after the robbery, could do so eleven months later. Counsel brought out discrepancies between the descriptions provided by the Williamses, and the actual appearance of Mr. Glover and Mr. Horton. Counsel also effectively cross examined Mr. Williams about the fact that he made a positive misidentification in the first photo lineup, picking an individual whose picture was just a "filler." He also drew to the jury's attention the fact that Mr. Williams seemed reluctant to acknowledge to the jury that he had at first misidentified a "filler" photograph. Overall, counsel effectively cast some doubt on the identification of Glover by Mr. Williams.

It is important to note that, although the eyewitness identification testimony was not strong, there was substantial evidence outside of the identification testimony. Glover was apprehended using the cards the very next day after the robbery. Also, Glover testified in the case against counsel's advice, admitting prior convictions at different times for burglary, robbery and attempted stealing. He seemed reluctant to admit the robbery conviction. He presented his version of how he came into possession of the cards. He testified he bought them for $25.00 from a woman by the name of Jackie Snow, who said she got them from someone named Tonya. This transaction occurred at the home of someone named Elbert Douglas. Glover testified he did not know how to contact any of these people because they had all moved. Glover said at the time of the robbery he was with a woman named "Chanile," but he had no idea how to get in touch with her either. Thus, he had no substantiation for his version of events. He volunteered to the jury he had been strongly cautioned not to testify, but that he chose to do so in order that he could tell the jury he was innocent. He admitted to knowing the credit cards were stolen but denied that he committed the robbery. He said that he obtained the cards in the early morning hours of the day he was apprehended. Glover sought to elicit sympathy from the jury, telling the jury he was the sole custodian of his nineteen-month-old son. Glover's counsel gave a reasonably thorough and engaging closing argument, attacking the eyewitness identification, and pointing out that Glover did not have possession, at the time of his arrest, of all of the credit cards taken from Mr. Williams. Counsel also pointed to other apparent inconsistencies, including the description of the car involved in the robbery. Counsel did not comment on Glover's testimony, which may have been wise in view of the possibility that the jury did not find Glover credible.

Glover failed to persuade the motion court that his counsel's performance was so deficient that he was denied a fair trial. He also fails to persuade us that the ruling of the motion court was clearly erroneous. Indeed, as the foregoing discussion of the evidence indicates, Glover fails to show that his attorney's failure to ask Mr. and Mrs. Williams about whether they discussed the photo line-ups had any bearing on the result of the case. Rather, the evidence suggests that many factors went into the jury's decision, and that many factors, including Glover's own testimony, were likely much more significant than any failure to ask whether Mr. and Mrs. Williams compared notes about the photo spread. The record does not reveal coun-

sel's performance to have been below a reasonable standard of competence. For instance, counsel clearly gave sound advice to· Glover about whether to testify, but Glover rejected that advice, taking a substantial risk. Accordingly, we cannot say that we are left with the firm and definite impression that the findings and conclusions of the motion court are clearly wrong. *Nolan,* 872 S.W.2d at 104.

### Conclusion

We hold that appellant did not met his burden of proving that he was denied effective assistance of counsel at trial. The judgment denying his motion under Rule 29.15 is affirmed.

ALBERT A. RIEDERER, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.