In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00200-CR
_____

JAMES ALLAN BURG II, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Montgomery County, Texas
Trial Cause No. 15-307592

MEMORANDUM OPINION

In seven issues, James Allan Burg II appeals his class A misdemeanor driving while intoxicated conviction. *See* Tex. Penal Code Ann. § 49.04(a), (d) (West Supp. 2017). Burg's first four issues contend that the trial court erred by denying four challenges for cause he lodged against venire members because of alleged material bias or prejudice. In his fifth issue, Burg argues that the trial court erred because it failed to suppress a blood warrant obtained with an affidavit that Burg contends

contained material misstatements and omissions made deliberately or with reckless disregard for the truth. Sixth, Burg asserts the trial court should have allowed his request for an article 38.23 instruction in the jury charge because of the issue surrounding the blood warrant. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). And last, Burg complains about the trial court's suspension of his driver's license as part of the terms of his community supervision. We overrule all of Burg's issues and affirm the trial court's judgment.

## Background

Texas State Trooper Matthew Cline stopped Burg late one night when Burg was driving on the interstate with his high beam lights against oncoming traffic. Patrolling with Trooper Cline—who was nearing the completion of his field training—was Texas State Trooper Richard Hazenberg, Trooper Cline's field training supervisor. Trooper Cline's patrol vehicle was equipped with a dash camera that recorded the stop, which was admitted into evidence. After both Trooper Hazenberg and Trooper Cline detected alcohol on Burg, Trooper Cline requested Burg exit his vehicle and conducted field sobriety tests on Burg. Based on the totality of his observations, including Burg's performance during the tests, Trooper Cline arrested Burg for driving while intoxicated and transported him to jail.

Burg refused to provide a blood sample, so Trooper Cline submitted an affidavit to a judge and obtained a warrant for Burg's blood. The blood alcohol test revealed Burg had an alcohol concentration of 0.212 grams of alcohol per one hundred milliliters of blood. The jury convicted Burg of driving while intoxicated, a class A misdemeanor in this case because his blood alcohol concentration level exceeded 0.15. *See* Tex. Penal Code Ann. § 49.04(d). Based on the suggestion of the jury, the trial court assessed a one-year sentence in county jail, but probated and suspended the sentence and placed Burg on community supervision for eighteen months. Additionally, the trial court ordered that Burg's driver's license be suspended for one year.

Burg appealed complaining of issues associated with voir dire, the affidavit resulting in the warrant for Burg's blood, an instruction in connection with the blood warrant, and the suspension of his driver's license.

**Venire Member Challenges**

In Burg's first four issues, he contends that the trial court improperly denied his challenges for cause against venire members three, five, ten, and twenty-two. Burg alleges these venire members were challengeable for cause under article 35.16 because they were either biased regarding a police officer's credibility compared to other witnesses, or they did not afford him the presumption of innocence with respect

3

to the results of a blood alcohol test. *See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (c)(2) (West 2006).

Specifically, venire members three and twenty-two stated that if they were given a number indicating that the defendant's blood alcohol level exceeded .08, the defendant was guilty. Moreover, when asked whether they would believe a police officer's testimony over a layperson solely based on the witness being a police officer, venire members three, five, and ten stated, "Yes." Venire member twenty-two alluded that he would likely listen to a police officer over someone else. Following the trial court's attempt to clarify whether the venire members would consider the evidence presented in the case and then judge the credibility of the witnesses based on their testimony versus their position as a police officer, the complained of venire members were then called to the bench individually to further discuss their alleged biased and prejudices.

Venire member number three was called to the stand after the trial court denied Burg's request to strike him. When asked to clarify his answers, venire member number three stated that "[a]nybody who's testifying it's a clean slate" and that with regard to the blood test, "[i]f everything is presented in the courtroom and it's .08 and everything's been presented legally, that's the law." Burg renewed his request to strike venire member three, but the trial court denied his request.

4

Venire member number five was then called to the stand because the trial court denied Burg's request to strike her regarding her inclination to give more weight to a police officer's testimony. However, after speaking with counsel and the trial court, venire member number five clarified that she would keep an open mind, because "you have to look at everything" and judge the officer's credibility after hearing the evidence. The trial court continued to deny Burg's request to strike venire member number five as well as deny his request for an extra preemptory strike.

Similarly, venire member number ten told the trial court he would listen to the evidence of the case and determine the credibility of the officer based on the officer's testimony, not his position as a police officer. The trial court denied Burg's renewed request to strike venire member number ten, as well as his request for an extra preemptory strike.

The court also denied Burg's request to strike venire member number twenty-two based on his assertion that police officers are better trained and thus, afforded more credibility. When asked about whether he would listen to all of the evidence and make a determination regarding the officer's credibility based on that evidence, venire member number twenty-two explained that context had a lot to do with his

5

answer, but that he would listen to everything. The trial court denied Burg's renewed request to strike.

Prior to seating the jury, Burg explained to the trial court that because his requests for venire members three and twenty-two were denied and that he then used two of his strikes to remove these venire members, questionable venire members five and ten would be seated on the jury. Burg requested two additional preemptory strikes to rid venire member numbers five and ten from the jury, but the trial court denied Burg's request.

To preserve error for a trial court's erroneous denial of a challenge for cause, Burg must show that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of-venire member, that his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

We review a trial court's decision to deny a challenge for cause by looking at the entire record to determine whether sufficient evidence supports the ruling. *See id.* (citing *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002)). "The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Id.*

6

(citing *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009)). In applying this test, we must afford considerable deference to the trial court's ruling because the trial judge is in the best position to evaluate a panel member's demeanor and response. *See id.* A trial court's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Id.* (citing *Gardner*, 306 S.W.3d at 296). "When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision." *Id.*

A venire member is challengeable "if he cannot impartially judge the credibility of witnesses[,]" but "this means only that jurors must be open-minded and persuadable, with no *extreme* or *absolute* positions regarding the credibility of any witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999). Because "'complete impartiality cannot be realized as long as human beings are called upon to be jurors[,]'" venire members "are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility." *Id.* (quoting *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (addressing a venire member who indicated that he would tend to believe a police officer more than another witness)); *see also Smith v. State*, 907 S.W.2d 522, 531 (Tex. Crim. App. 1995) (holding that a venire member who said he might give more credibility to a Texas Ranger's testimony was allowed to serve as a juror); *Moore v. State*, 54

7

S.W.3d 529, 537 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that a venire member was not challengeable for cause simply because they stated that they would trust an adult's credibility more than that of a child).

"Before venire members may be excused for cause, the law must be explained to them, and they must be asked whether they can follow [the] law, regardless of their personal views." *Davis*, 329 S.W.3d at 807. The party seeking to have the venire member struck does not meet his burden of establishing that the challenge is proper "until he has shown that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law." *Id.*

Initially, we note that Burg did not use peremptory strikes on either venire member five or ten, but used two on venire members three and twenty-two. Burg identified venire members five and ten as the objectionable jurors that were seated on the jury. The record is silent as to whether Burg exhausted all of his peremptory strikes preventing him from striking venire members five and ten; but clearly, one strike remained as it was used on venire member twenty-two. Thus, it is questionable whether Burg successfully preserved his issues on appeal. *See id.*

Nevertheless, affording the trial court its considerable discretion, after each of the objected to venire members subject of this appeal were called to the bench and

explained the law regarding the credibility of witnesses and evaluating results of a blood alcohol test, venire members three, five, ten, and twenty-two each stated, as detailed above, that he or she could apply the law as given regardless of any personal views. *See id.*; *see also Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016). Thus, based on our review of the entire voir dire, we conclude that the trial court did not clearly abuse its discretion by denying Burg's challenge for cause to venire members three, five, ten, or twenty-two. We therefore overrule Burg's issues one through four.

## Suppression of Evidence

Burg argues in his fifth issue that the trial court erred in denying his motion to suppress the blood warrant that was obtained with an affidavit completed by Trooper Cline that Burg alleges contained deliberate or reckless material misstatements and omissions.

"[A] search warrant may be obtained from a magistrate only after submission of an affidavit setting forth substantial facts establishing probable cause." *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011). Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a fair probability that evidence of a crime will be found in a particular place at the time the warrant is issued. *Id.* at 568–69. Under *Franks v. Delaware*, if a

defendant establishes by a preponderance of the evidence that an affiant made false statements knowingly and intentionally or with reckless disregard for the truth in a probable cause affidavit and that the false statements were material to establish probable cause, the false material must be excised from the affidavit. 438 U.S. 154, 155–56 (1978).

We review a trial court's decision on a *Franks* suppression issue under the same standard that we review a probable-cause deficiency, a mixed standard of review. *See Jones v. State*, 338 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review *de novo* the application of the law. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Jones*, 338 S.W.3d at 739. However, in deciding a *Franks* motion, the trial court may consider not only the probable-cause affidavit, but also the evidence offered by the party moving to suppress, because this attack on the sufficiency of the affidavit arises from claims that it contains false statements. *See Franks*, 438 U.S. at 154–56; *Cates v. State*, 120 S.W.3d 352, 355–57 (Tex. Crim. App. 2003).

"An affidavit supporting a search warrant begins with a presumption of validity[.]" *Cates*, 120 S.W.3d at 355. While the assumption exists that the evidence supporting a probable cause finding is truthful, the Fourth Amendment does not mandate that every fact in a supporting affidavit be necessarily correct. *See Franks*, 438 U.S. at 164–65. "A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it." *Dancy v. State*, 728 S.W.2d 772, 782–83 (Tex. Crim. App. 1987) (clarifying that a misstatement in an affidavit resulting from mere negligence in checking or recording facts relevant to probable cause determination "is beyond the pale of *Franks*"); *see also Franks*, 438 U.S. at 165.

In this case, almost immediately following opening statements, as well as throughout Trooper Cline's testimony, and during a separate *Franks* hearing outside the presence of the jury, Burg attempted to argue that the blood warrant, and thus the results from the blood alcohol test derived from obtaining Burg's blood, should be suppressed because Trooper Cline allegedly made intentional or deliberately false statements and omissions in his affidavit to obtain the warrant. Trooper Cline testified that after stopping Burg and approaching his vehicle, he noticed that Burg seemed confused and was moving very slowly, which to him may indicate

11

intoxication. While acknowledging that he could not recall if he smelled alcohol on Burg's breath initially or after he requested Burg exit the vehicle, Trooper Cline stated at trial that he smelled alcohol and characterized it as "strong." Nonetheless, during cross-examination, Trooper Cline said that his affidavit only indicated the odor was "moderate," and the video of the stop indicates that before Burg is asked to exit his vehicle, Trooper Cline tells Trooper Hazenberg that he does not think he smells alcohol. However, the video also shows that Troopers Cline and Hazenberg discussed the matter despite being unable to understand the entire conversation.

Trooper Cline also explained that he conducted his DWI investigation that included standardized field sobriety tests. Trooper Cline detected six out of six clues while performing the HGN (horizontal gaze nystagmus). Burg also performed the walk-and-turn test and the one-leg-stand test.

With respect to the walk-and-turn, Trooper Cline indicated in his case report (not admitted into evidence) that Burg had two out of eight clues. But, in his affidavit to obtain the blood warrant, he noted an additional third clue. Trooper Cline explained that two clues are required to consider the subject to have failed the walk-and-turn test.

Concerning the one-leg-stand test, Trooper Cline testified that his affidavit for the blood warrant indicated that Burg had three clues on the one-leg-stand, but his

12

case report only indicated two. Furthermore, during cross-examination, Trooper Cline was asked specifically to evaluate, while watching the video, one of the clues he did not mark in his case report regarding whether Burg raised his arms during the test. Trooper Cline maintained Burg impermissibly raised one of his hands, although after reviewing the video, any movement is difficult to detect. Nevertheless, when asked whether Trooper Cline added that Burg lifted his arm to constitute the third clue for purposes of the warrant, Trooper Cline stated "[n]o, I did not." Two clues are required to indicate intoxication following the performance of the one-leg-stand test. Based on all of Trooper Cline's observations of Burg as well as Burg's performance on the field sobriety tests, Trooper Cline arrested Burg for suspected driving while intoxicated.

Prior to Burg's vehicle being towed, an inventory was conducted of it following Burg's arrest, and a receipt indicating the purchase of alcoholic beverages was found. Trooper Cline stated in his affidavit the receipt was for beer purchased three hours prior to Burg's arrest; the video shows Trooper Cline showing the receipt to Burg and asking him about it, to which Burg did not respond. While Trooper Cline noted the receipt in his affidavit for the warrant, the actual receipt could not be located for trial.

During the *Franks* hearing, Burg denied purchasing the alcohol earlier that day. Rather, Burg contended that he did not purchase beer on the night of his arrest and produced some of his banking records that do not indicate a purchase on that night.

Moreover, the affidavit included a note that Burg had received various merchandise from a beer manufacturer's marketer at a local establishment, but did not indicate when he obtained the merchandise. Burg argued that he received the merchandise from his friends who had gotten it at noon that day. However, the video has Burg stating that he received the merchandise that night, but then later saying that he and his friends had been at the establishment at noon. Burg argues that Trooper Cline's failure to include that the merchandise was obtained at noon was a material omission in the affidavit.

Regarding the inconsistencies between his affidavit and his case report, Trooper Cline stated that the affidavit for the blood warrant is made immediately after the suspect is arrested at the jail, while he writes his report several days after the suspect's arrest. Thus, while acknowledging he is human and makes mistakes, Trooper Cline explained that the most accurate indication of what clues of intoxication he saw are the ones indicated in the affidavit. Trooper Cline also denied Burg's allegation that he made any statement or omission concerning the affidavit

in an intentional or deliberate attempt to obtain the blood warrant. At the conclusion of the *Franks* hearing, the trial court denied his motion without further explanation and the blood alcohol evidence was allowed to be admitted into evidence.

While some inconsistences exist amongst Trooper Cline's testimony regarding his observations and his case report that is not in evidence, his affidavit supporting the blood warrant, and the video of the stop, we must afford almost total deference to the trial court in its rulings on questions of historical fact in the trial court's resolution of Burg's complaints. *See Johnson*, 68 S.W.3d at 652–53. The trial court rejected Burg's assertion that Trooper Cline's misstatements or alleged omissions were deliberate or intentional. *See Franks*, 438 U.S. at 155–56; *Dancy*, 728 S.W.2d at 782–83. The trial court's ruling is supported by the record. *See Dancy*, 728 S.W.2d at 782–83. In addition, the affidavit lists numerous other facts— including the clues on the HGN, his eyes being glassy, him swaying, his mood swings, the undisputed clues on the other field sobriety tests, and some odor of alcohol— that support probable cause even absent the complained of statements. *See Jordan*, 342 S.W.3d at 568–69. We overrule Burg's fifth issue.

### Jury Instruction

Burg asserts in his sixth issue the trial court erred by refusing to submit a jury instruction pursuant to Texas Code of Criminal Procedure article 38.23. Burg's

request for the instruction concerned the underlying facts surrounding Trooper Cline's obtaining the blood warrant and whether probable cause existed.

When reviewing jury-charge issues, we first determine whether an error exists. *See Phillips v. State*, 463 S.W.3d 59, 64 (Tex. Crim. App. 2015). It would be error to admit evidence obtained against a defendant that was illegally seized by police in violation of a defendant's constitutional rights. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of [the Texas or United States constitutions] shall be admitted in evidence against the accused on the trial of any criminal case."). When there is evidence admitted in a trial that creates a question regarding whether

> the fruits of a police-initiated search or arrest were illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this [a]rticle, then and in such event, the jury shall disregard any such evidence so obtained."

*Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (quoting Tex. Code Crim. Proc. Ann. art. 38.23(a)).

"A defendant's right to the submission of jury instructions under [a]rticle 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To justify the

16

necessity of an article 38.23(a) instruction, there must be controverted evidence demonstrating a "*factual* dispute about how the evidence was obtained." *Robinson*, 377 S.W.3d at 719 (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). In other words, before the trial court is required to instruct the jury that it can disregard evidence, the record must include evidence sufficient to create a genuine issue of material fact as to whether the evidence was illegally obtained. *See Madden*, 242 S.W.3d at 513. "Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court." *Robinson*, 377 S.W.3d at 719. Moreover, "if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue in not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Madden*, 242 S.W.3d at 510.

Burg argues that because Trooper Cline's affidavit and testimony included clues not indicated on his case report with respect to the walk-and-turn and one-leg-stand tests and allegedly omitted other facts in the affidavit, a fact dispute existed warranting the instruction about whether the blood was illegally obtained. However, we rejected Burg's complaint that sufficient probable cause was not established for the issuance of the blood warrant in our preceding discussion. Specifically, even if

17

we excised every challenged statement in Trooper Cline's affidavit, the warrant still established probable cause because Burg displayed glassy eyes, smelled of alcohol, exhibited six clues on the HGN test, two clues on the walk-and-turn test, and two clues on the one-leg-stand test, along with other observed factors. Sufficient undisputed facts existed establishing probable cause to decide the lawfulness of the challenged conduct. *See id.* Trooper Cline's affidavit provided probable cause for the magistrate to issue the warrant for Burg's blood.

We conclude the trial court was not required to charge the jury that it could disregard evidence that it found had been illegally obtained by Trooper Cline because there was no evidence showing that the evidence was illegally obtained. *See Robinson*, 377 S.W.3d at 719; *Madden*, 242 S.W.3d at 513. Issue six is overruled.

**Driver's License Suspension**

In Burg's seventh and last issue, he argues the trial court erred by imposing a one-year driver's license suspension as a condition of his community supervision.

An award of community supervision is not a right, but is a contractual privilege, and the conditions of community supervision agreed to by the defendant are the terms of the contract entered into between him and the trial court. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). If a defendant fails to object to conditions of probation at trial, he affirmatively accepts them and is barred from

18

complaining about them for the first time on appeal. *See* Tex. R. App. P. 33.1(a); *Speth*, 6 S.W.3d at 535. The only exceptions involve situations where the probationer has effectively been denied the opportunity to object, such as a modification of the conditions of community supervision without a hearing. *See Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003).

Burg did not object at trial to the suspension of his driver's license. He cannot now complain about the alleged condition for the first time on appeal. *See Speth*, 6 S.W.3d at 535. We overrule Burg's seventh issue.

Having overruled all of Burg's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 7, 2017
Opinion Delivered April 11, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.